IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

EDWARD DAY,
        Plaintiff,

vs.                             Civil Action No. 12-267

JEANNETTE BASEBALL
ASSOCIATION, JIM POMPEI and
LOUIS ALTERI,
        Defendants.

## REPORT AND RECOMMENDATION

**REPORT**

### I. INTRODUCTION

Presently before the Court is Defendants', Jeannette Baseball Association's, Jim Pompei's, and Louis Alteri's Motion for Summary Judgment [ECF No. 64]. For the following reasons, it is respectfully recommended that Defendants' motion be granted.

### II. BACKGROUND

Plaintiff, Edward E. Day, acting *pro se*, filed his complaint against Defendants Jeanette Baseball Association, Jim Pompei, President of the Jeanette Baseball Association and Louis Alteri, Chairman of the Jeanette Baseball Association.[1] The complete facts set forth in the complaint are as follows:

> Jim Pompei and Louis Alteri continue on a daily, weekly, monthly and yearly Bases [sic] to treat African American Head coaches with the Jeannette Baseball Association differently that Caucasian

---

[1] The Court has employed a "less stringent standard" in considering Plaintiff's pro se complaint, has construed the complaint liberally and has drawn all reasonable inferences from what is alleged as well as from what is not. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Dluhos v. Stasberg*, 321 F.3d 365, 369 (3d Cir. 2003). Notwithstanding this instruction, pro se litigants are not relieved of their obligation to allege sufficient facts to support a legally cognizable claim. *See Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002); *Riddle v. Mondragon*, 83 F.3d 1197, 2102 (10th Cir. 1996).

> American head coaches. This has been going on since June 2010 until now, under their direction. Public treatment toward African American Head baseball coaches is not limited to being treated like children. African American Head coaches are told to shut up, with fingers pointed in their face in the public and in board meetings, under Jim Pompei and Louis Alteri direction [sic]. African American Head Baseball coaches of the Jeannette Baseball program Under [sic] the leadership of Jim Pompei and Louis Alteri are not invited to the Golf [sic] outing's [sic]/fund raisers. I am seeking to be made whole and to be treated equally as a Head coach and Board member with the Jeanette Baseball Association. The plaintiff Edward E. Day demands that Jim Pompei and Louis Alteri step down in their positions, in addition the plaintiff wants $500,000.00 for damages and any other relief the court deems just.

Compl. [ECF No. 1] at 1-2. Plaintiff claims that these acts were a violation of Title VII in the form of racial discrimination. *Id*. at 1.

In support of its Motion for Summary Judgment, Defendants aver that Plaintiff was barred from the organization after he was involved in an altercation while acting as coach on behalf of the Jeanette Baseball Association to which the local police department was dispatched and following that altercation, numerous letters complaining about Plaintiff were received by the Association. Defs.' Concise Statement of Material Facts [ECF No. 73] at ¶¶ 2-3. Moreover, Plaintiff has never provided the appropriate clearances to hold his coaching position. *Id*. at ¶¶ 5-6. Defendants also state that the baseball Association is a voluntary organization. *Id*. at ¶ 1.

Defendants move for summary judgment on the basis that (1) Plaintiff is not an employee under Title VII; (2) Plaintiff has no evidence to meet his burden to show a prima facie case of racial discrimination; (3) Defendants have evidence to show multiple legitimate, non-discriminatory reasons for barring Plaintiff from participation in the organization, and Plaintiff has no evidence to show that the reasons were a mere pretext. Defs.' Mot. for Summary Judgment [ECF No. 64] at 1.

Plaintiff was to file a response to the Motion for Summary Judgment by September 23,

2013, but has failed to do so. Therefore, under Local Rule 56(E), the facts set forth in Defendants' Concise Statement of Material Facts [ECF No. 67] will be deemed admitted for purposes of this Motion. *See* LCvR 56(E) ("Alleged material facts set forth in the moving party's Concise Statement of Material Facts or in the opposing party's Responsive Concise Statement, which are claimed to be undisputed, will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party.").

## III. JURISDICTION

This Court has original jurisdiction under 28 U.S.C. § 1331 as Plaintiff advanced claims under Title VII of the Civil Rights Act of 1964.

## IV. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A moving party is entitled to summary judgment if he demonstrates that "the nonmoving party has failed to make a sufficient showing of an essential element of [his] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party bears the burden of adducing palpable evidence "establishing that there is a genuine factual dispute for trial" and may not merely rely upon "bare assertions or conclusory allegations" to survive summary judgment. *Hogan v. Twp. of Haddon*, 278 Fed.App'x 98, 101 (3d Cir. 2008) (citing *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982)). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied [only] when there is a genuine issue of material fact." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

3

242, 247-48 (1986) ("there is no genuine issue if the evidence presented in the opposing affidavits is of insufficient caliber or quantity to allow a rational finder of fact to find [for Plaintiffs] by clear and convincing evidence")).

V. ANALYSIS

The first issue that the Court must address is whether Plaintiff, an unpaid volunteer baseball coach for a community baseball league is entitled to protection against racial discrimination under Title VII as an "employee". Under Title VII, it is illegal "for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against an individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . race[.]" 42 U.S.C. § 2000e-2(a)(1).

The term "employer" is defined as "a person engaged in industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year[.] . . ." 42 U.S.C. § 2000e(b). Individual employees are not liable under Title VII claims. *Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1078 (3d Cir. 1996) (collecting cases).

Title VII defines an "employee" as "an individual employed by an employer." 42 U.S.C. § 2000e(f). This definition "is completely circular and explains nothing." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992). The United States Supreme Court has explained that because Congress did not provide a clear definition for "employee" under Title VII, "Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine." *Id*. at 322-23. Likewise, in defining an "employee" for Title VII purposes, the Supreme Court has stated:

> [W]hether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the

> manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Id*. at 323-24 (citations omitted). These factors must be viewed by a totality of the circumstances and no single factor is decisive of proving an employee-employer relationship. *Id*.

Further, [i]n determining whether an organization has the necessary relationship with a plaintiff to be liable under Title VII, the [Court of Appeals for] the Third Circuit looks to 'the level of control an organization asserts over an individual's access to employment and the organization's power to deny such access." *Williams v. City of Harrisburg*, 2005 WL 2335131 (M.D.Pa. 2005) (quoting *Graves v. Lowery*, 117 F.3d 723, 728 (3d Cir. 1997)). Moreover, courts have held that volunteers who do not receive remuneration or benefits for their service are not "employees" under Title VII. *See e.g., O'Connor v. Davis*, 126 F.3d 112, 116 (2d Cir. 1997); *Smith v. Berks Community Television*, 657 F.Supp. 794, 795-96 (E.D.Pa. 1987).

However, before the Court considers the factors set forth by the Supreme Court in *Darden*, it must be determined whether Plaintiff is a "hired party." "This 'crucial and elementary initial inquiry – whether there exists an employment relationship, according to the ordinary meaning of the words' is obligatory before 'jumping straight into verbal manipulation of the case law tests for an employment relationship.'" *Kemether v. Pennsylvania Interscholastic Athletic Ass'n, Inc.*, 15 F.Supp.2d 740, 758 (E.D.Pa. 1998) (quoting *Graves v. Women's Professional Rodeo Ass'n*, 907 F.2d 71, 73 (8th Cir. 1990)). A volunteer who is not hired is

neither an independent contractor nor an employee and "falls outside 'the conventional master-servant relationship as understood by the common-law agency doctrine.'" *Kemether*, 15 F.Supp.2d at 758 (quoting *O'Connor v. David*, 126 F.3d 112, 115 (2d Cir. 1997) (other citation omitted)). Thus, *Darden's* common-law agency analysis does not apply in situations such as this. *Id*.

*Kemether* is instructive to this case. A high school basketball official brought a claim, *inter alia*, under Title VII for sex discrimination. *Kemether*, 15 F.Supp.2d at 756-57. The district court granted summary judgment in favor of the athletic association and found that the sporting official was not an employee for Title VII purposes because she did not receive payment for her services. *Id*. at 758. The court stated that the relationship between the athletic association and its sporting officials "categorically resists classification as 'employment' according to the ordinary usage of that term." *Id*. at 759 (citations omitted).

First and foremost, to the extent that Pompei and Alteri are being sued as "employees" of the Association, they are individuals not liable under Title VII, and it is respectfully recommended that their Motion for Summary Judgment be granted. Additionally, the Court also respectfully recommends that summary judgment be granted for Jeannette Baseball Association as Plaintiff has set forth no set of facts that a reasonable fact finder could make a determination that he was an employee under Title VII. Plaintiff was a volunteer baseball coach for the Jeannette Baseball Association. He did not receive compensation or benefits for his services. Plaintiff was never a "hired party" and no employment relationship existed between the two. Moreover, the Jeannette Baseball Association is not a business, for-profit or otherwise, but a community voluntary organization. While the Association has a "board," there is no evidence that any member of the board or any other volunteer receives compensation or benefits in

6

exchange for their services to the Association.  Because the Court agrees with Defendants that Plaintiff was not an employee for Title VII purposes, Defendants' other arguments in support of its Motion for Summary Judgment need not be addressed.  Accordingly, it is respectfully recommended that Defendants' Motion for Summary Judgment be granted.

VI.  CONCLUSION

Based on the foregoing, it is respectfully recommended that Defendants' Motion for Summary Judgment be granted.

**RECOMMENDATION**

For the aforementioned reasons, it is respectfully recommended that Defendants', Jeannette Baseball Association's, Jim Pompei's, and Louis Alteri's, Motion for Summary Judgment [ECF No. 64] be GRANTED.

Parties who seek to challenge this Report and Recommendation must seek review by the district judge by filing written objections with the Court by October 18, 2013. Failure to do so may waive the right to appeal. Any party opposing written objections shall have fourteen days after the service of the objections to respond thereto.

Dated: October 4, 2013

Respectfully submitted,

/s Robert C. Mitchell
Robert C. Mitchell
United States Magistrate Judge
